\*\*E-Filed 5/24/06\*\*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARIA WHITWORTH, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>HURLEY INDUSTRIES, INC., et al.,<br><br>    Defendants. | Case Number C 06-00992 JF<br><br>ORDER[1] DENYING DEFENDANTS' MOTION TO DISMISS<br><br>[re: docket no. 19] |

    Defendants Hurley Industries, Inc. and Advanced Marketing Int'l., Inc. (collectively "AMI")[2] move to dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6). Plaintiffs Maria Whitworth ("Whitworth") and Hy Cite Corporation ("Hy Cite") oppose the motion.[3] The Court heard oral argument on May 4, 2006. For the reasons set forth

---

[1] This disposition is not designated for publication and may not be cited.

[2] Defendants refer to Hurley Industries, Inc. and Advanced Marketing Int'l., Inc. collectively as "AMI," and Plaintiffs state that "[u]pon information and belief, HII is a corporate affiliate of AMI."

[3] On April 29, 2006, Plaintiffs filed a motion for leave to file a sur-reply brief addressing case authority cited by Defendants in their reply brief. The Court has considered Plaintiffs' sur-reply brief, which does not affect the outcome of this motion. For the purpose of making the record clear, this Order clarifies that Plaintiffs' motion to file a sur-reply brief is GRANTED.

below, the motion will be denied.

# I. BACKGROUND

AMI is alleged to be a Florida corporation[4] with its principal place of business in Mt. Dora, Florida, which is in the business of selling and marketing stainless steel cookware and kitchen equipment through independent distributors. Compl., ¶¶ 3, 4; Hurley Decl., Ex. 13. Since 2001, Whitworth has been a resident of California. Whitworth Decl., ¶ 2. In 2003, Whitworth became a distributor for AMI, and entered into a distributor agreement for the purpose of selling cookware. *Id.*, ¶ 3. While working for AMI, Whitworth lived in California and attended only two trade shows per year outside of California. *Id.*, ¶ 5.

In 2005, Whitworth was required to sign a new distributor agreement (the "distributor agreement"), which includes the following relevant provisions:

> Covenant Not to Compete. DISTRIBUTOR agrees that for a period of two (2) years after termination of his or her contract/business relationship with HII, DISTRIBUTOR will not in any manner, whether with or without cause, within the continental United States of America, directly or indirectly engage in the sale or marketing of any cookware through public presentations, cooking shows, or any related activity or in any business competitive with HII. This will include but is not limited to, engaging in such business as owner, partner, DISTRIBUTOR, agent, or as employee of any person, firm, or corporation engaged in such business, or in being interested directly or indirectly in any such business conducted by any person, firm, or corporation.
>
> This restriction on distribution specifically includes, but is not limited to, the sale or marketing of any stainless steel or waterless cookware through public presentations, live cooking shows, or related performances, at home shows, fairs, mall shows, or similar places. DISTRIBUTOR is further restricted from using any designs or display ideas used by HII.
>
> Liquidated Damages. DISTRIBUTOR agrees that, in the event of his/her violation of this agreement, the DISTRIBUTOR will pay as liquidated damages to HII the sum of $1,000.00 per day, for each day or part thereof that DISTRIBUTOR continues to breach this agreement. Further, as liquidated damages, if DISTRIBUTOR, without written consent of HII, fails to comply with any provision of this agreement, DISTRIBUTOR'S right to any commissions or bonuses which DISTRIBUTOR would otherwise be entitled shall terminate and HII's obligation to make any such payment shall cease. It is recognized and

---

[4] Plaintiffs state in their opposition that AMI is an *Illinois* corporation, citing ¶ 7 of the complaint. However, ¶ 7 doesn't address this issue, and ¶¶ 3 and 4 allege that AMI and HII are Florida corporations.

> agreed that damages in such event are difficult in ascertaining, though great and irreparable, and that this agreement with respect to liquidated damages shall in no event prevent HII from obtaining injunctive relief.
>
> Choice of Law and Venue. The validity, interpretation and performance of this agreement shall be controlled by and construed under the laws of the State of Florida. Both parties agree that any objections to venue be waived and that venue shall be in the Circuit Court for Lake County, Florida.

Hurley Decl., Ex. 13, §§ 17, 21, 23.

Hy Cite is alleged to be a Wisconsin corporation with its principal place of business in Madison, Wisconsin, which sells cookware and related products through distributors and is a direct competitor or AMI. Compl., ¶¶ 2, 14. On January 15, 2006, Whitworth and Hy Cite reached an agreement whereby Whitworth would distribute Hy Cite's products, and Whitworth stopped working for AMI. Whitworth Decl., ¶ 7. In her position as a Hy Cite distributor, Whitworth has worked exclusively in California. *Id.*, ¶ 8.

On February 14, 2006, Whitworth and Hy Cite filed the complaint in the instant action against Defendants HII and AMI, seeking a declaratory judgment that the Distributor Agreement is void and unenforceable pursuant to California Business and Professional Code § 16600 and that Hy Cite has not tortiously interfered with the agreement between Whitworth and AMI/HII. Defendants move to dismiss for improper venue, for failure to establish federal jurisdiction, or on the basis that Plaintiffs are seeking an anticipatory declaratory judgment..

Hy Cite and other individual plaintiffs have filed similar actions in other federal district courts. On August 31, 2005, Hy Cite and six individual plaintiffs filed a complaint against AMI in the Central District of California *Ferguson, et al. v. Advanced Marketing International, Inc.* Furbush Decl., Ex. 1. On December 20, 2005, that court issued an order granted AMI's motion to dismiss for improper venue with respect to Hy Cite and the four individual plaintiffs whose sales activities took place in states other than California. *Id.*, pp. 14, 17. However, that court denied AMI's motion to dismiss for improper venue with respect to the two individual plaintiffs who were alleged to be citizens of California performing their marketing and selling in California, reasoning that:

> when an employee (or independent contractor or distributor) is a citizen of California, lives and works in California, visits trade shows in California, and

1    markets and sells goods to consumers located in California, then the fact that the
2    new employer is incorporated or does business in another state besides California
     does not render California's antipathy to noncompetition agreements less potent.

3  *Id*., p. 14. On December 9, 2005, Hy Cite filed a complaint against AMI in the Western District

4  of Wisconsin, alleging facts similar to those alleged in the Central District of California action.

5  *Id*., Ex. 2. AMI has filed a motion to dismiss the Wisconsin action, which is pending. *Id*., Ex. 3.

6          AMI has filed three actions against Hy Cite and other former AMI distributors in state

7  court in Lake County, Florida, on September 30, 2005, October 6, 2005, and December 27,

8  2005. *Id*., Exs. 4-6. Hy Cite has removed these actions to the District Court for the Middle

9  District of Florida, and AMI has moved to remand them to state court based on the forum

10 selection clause of the Distribution Agreement. *Id*., Exs. 7-9.

## II. LEGAL STANDARD

13         A motion to dismiss for improper venue may be brought pursuant to Federal Rule of Civil

14 Procedure 12(b)(3). In deciding a Rule 12(b)(3), the court need not accept the pleadings as true

15 and may consider facts outside of the pleadings. *See, e.g., Agueta v. Banco Mexicano, S.A.*, 87

16 F.3d 320, 324 (9th Cir.1996); *American Home Assurance Co. v. TGL Container Lines, Ltd.*, 347

17 F.Supp.2d 749, 755 (N.D. Cal. 2004). When a 12(b)(3) motion is based upon a forum selection

18 clause, as the instant motion is, the court "must draw all reasonable inferences in favor of the

19 non-moving party and resolve all factual conflicts in favor of the non-moving party." *Murphy v.*

20 *Schneider National, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004).

21         For purposes of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6),

22 the plaintiff's allegations are taken as true, and the Court must construe the complaint in the light

23 most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). Leave to

24 amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by

25 amendment. *Lucas v. Department of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995). When

26 amendment would be futile, however, dismissal may be ordered with prejudice. *Dumas v. Kipp*,

27 90 F.3d 386, 393 (9th Cir. 1996).

28

# III. DISCUSSION

**A.    Forum selection clause**

The parties dispute whether the forum selection clause in the Distribution Agreement requires dismissal of the instant action for improper venue. Defendants argue that the clause establishes mandatory venue in Florida, while Plaintiffs contend that Whitworth is entitled to the benefit of California's public policy disfavoring noncompetition agreements and that Hy Cite is not a party to the Distribution Agreement.

There is a strong presumption in favor of the validity of forum selection clauses, which are "prima facie valid and should not be set aside unless the party challenging enforcement of such a provision can show it is '"unreasonable' under the circumstances.'" *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996) (citing *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). A forum selection clause is unreasonable only if:

> (1) its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power,
>
> (2) the selected forum is so "gravely difficult and inconvenient" that the complaining party will "for all practical purposes be deprived of its day in court;" or
>
> (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought.

*Id*. (internal citations omitted). Plaintiffs argue that enforcement of the forum selection clause would contravene California public policy. Although "choice of law provisions are usually respected by California courts," a forum selection clause "designating [a foreign] law will not be given effect if it would violate a strong California public policy . . . [or] 'result in an evasion of . . . a statute of the forum protecting its citizens.'" *Hall v. Superior Court*, 150 Cal.App.3d 411, 416-17 (1983) (internal citations omitted).

As Defendants argue, forum selection clauses themselves do not always violate California public policy. For example, in *Swenson v. T-Mobile USA, Inc.*, 415 F.Supp.2d 1101, 1104 (S.D. Cal. 2006), the court held that the forum selection clause designating Washington as the litigation forum was valid, even though Washington law arguably might have led "to a result conflicting with the provisions of [California Business and Professions Code] § 16600." However, that

court's conclusion relied on the fact that California and Washington both follow Section 187 of the Restatement (Second) of Conflict of Laws to determine the enforceability of a choice of law provision:

> Enforcement of the forum selection clause here does not contravene a California policy as to forum. Both California and Washington use the same rule to enforce these clauses. [citations] The forum selection clause requiring the case to be litigated in Washington is therefore valid.

*Id*. at 1105.  Similarly, in *Google, Inc. v. Microsoft Corp.*, 415 F.Supp.2d 1018, 1025 (N.D. Cal. 2005), the court's determination that "nothing prevents Google and Lee from making the same arguments in the Washington state proceeding that they make here" relied on the fact that California and Washington both follow Section 187 of the Restatement:

> Google and Lee contend that "the Washington state court forum . . . is inadequate to protect [Google and Lee's] separate and independent rights under California law." The flaw in this argument is that Google and Lee fail to explain why they cannot ask the Washington state court to apply California law. Both states apply the Restatement (Second) of Conflict of Laws § 187 ("section 187") to determine whether choice-of-law provisions are valid.

*Id*. at 1022.

In the instant case, however, Florida and California do not apply the same rules in determining whether choice of law provisions are valid.  Choice of law provisions are authorized by Florida Statute § 671.105(1),[5] and, "[g]enerally, Florida enforces choice-of-law provisions unless the law of the chosen forum contravenes strong public policy." *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours and Co.* 761 So. 2d 306, 311 (Fla. 2000).  In contrast, California follows the Restatement (Second) of Conflict of Laws § 187(2), *see Nedlloyd Lines B.V. v. Superior Court*, 3 Cal.4th 459, 464-65 (1992), which provides as follows:

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to

---

[5] "Except as provided in this section, when a transaction bears a reasonable relation to this state and also to another state or nation, the parties may agree that the law either of this state or of such other state or nation will govern their rights and duties.  Failing such agreement, this code applies to transactions bearing an appropriate relation to this state." Fla. Stat. § 671.105(1).

6

Case No. C 06-00992 JF
ORDER DENYING DEFENDANTS' MOTION TO DISMISS
(JFLC1)

that issue, unless either

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

In other words, a California court first must determine whether (1) the chosen state has a substantial relationship to the parties or their transaction or (2) there is any other reasonable basis for the parties' choice of law. *Nedlloyd*, 3 Cal.4th at 466. If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law. *Id.* If either test is met, however, the Court must determine whether the chosen state's law is contrary to a fundamental policy of California. *Id.* If there is no such conflict, the Court shall enforce the parties' choice of law. If there is a fundamental conflict with California law, the Court must determine whether California has a materially greater interest than the chosen state in the determination of the particular issue. *Id.* If California does have a materially greater interest than the chosen state, the choice of law will not be enforced, because in such circumstance the Court will decline to enforce a law contrary to California's fundamental policy. *Id.*

      Because of the differences between Florida's and California's choice of law rules, this Court will not presume that enforcement of the forum selection clause would not contravene California public policy. Instead, following *Hall*, a "determination as to the validity of the choice of law provision is prerequisite to a determination of whether the forum selection clause should be enforced." *Hall*, 150 Cal.App.3d at 416. In the instant case, Florida, which is AMI's principal place of business, has a substantial relationship to the parties or the transaction. *Nedlloyd*, 3 Cal.4th at 467 ("substantial relationship present when 'one of the parties is domiciled' in the chosen state"). However, there is a fundamental conflict between Florida and California laws governing whether non-competition agreements are enforceable. Under California law, there is a strong public policy against non-competition agreements. Cal. Bus. & Prof. Code § 16600 ("Except as provided in this chapter, every contract by which anyone is

Case No. C 06-00992 JF
ORDER DENYING DEFENDANTS' MOTION TO DISMISS
(JFLC1)

restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."). In contrast, Florida law permits non-competition agreements "so long as such contracts are reasonable in time, area, and line of business." Fla. Stat. § 542.335. Accordingly, this Court must determine whether California has a materially greater interest than Florida in the determination of the instant case.

Section 16600 was intended to protect the employment interests of individuals such as Whitworth, who was a resident of California when she became a distributor for AMI and lived and worked in California while employed by AMI. Whitworth Decl., ¶¶ 2-5. The policy underlying § 16600 is that "'[t]he interests of the employee in his own mobility and betterment are deemed paramount to the competitive business interests of the employers, where neither the employee nor his new employer has committed any illegal act accompanying the employment change.'" *Application Group, Inc. v. Hunter Group, Inc.*, 61 Cal.App.4th 881, 900-901 (1998) (quoting *Diodes, Inc. v. Franzen*, 260 Cal.App.2d 244, 255 (1968)).

Defendants cite cases in which California's policy against non-compete provisions does not compel courts to follow California law. These cases, however, are distinguishable. While the First Circuit determined in *Ferrofluidics Corp. v. Advanced Vacuum Components, Inc.*, 968 F.2d 1463, 1468 (1st Cir. 1992), that "California does not trump New Hampshire," this conclusion was based on facts substantially different than those in the instant case. In *Ferrofluidics*, there was "an employment contract performed in New Hampshire by a New Hampshire employer and a New Hampshire employee throughout the employment period." *Id*. In *Lowry Computer Products, Inc. v. Head*, the Eastern District of Michigan noted that § 16600 "'invalidates provisions in employment contracts prohibiting an employee from working for a competitor after completion of his employment . . . unless they are necessary to protect the employer's trade secrets.'" *Lowry*, 984 F.Supp. 1111, 1114-15 (E.D. Mich. 1997) (quoting *Muggill v. Reuben H. Donnelley Corp.*, 62 Cal.2d 239, 242 (1965)). Because trade secrets were "precisely what [was] at issue" in that case, the *Lowry* court held that California did not have a fundamental public policy interest in preventing the enforcement of the non-compete provision. *Id*. at 1115. In contrast, Defendants have neither alleged nor argued that trade secrets are at

issue.

This Court concludes that California has a materially greater interest than Florida in the determination of the instant case, and that enforcement of the forum selection clause would contravene a strong California public policy. Accordingly, it is not necessary for the Court to reach the issue of whether Hy Cite is bound by the forum selection clause.

**B.    Jurisdiction over Hy Cite's claim against AMI for declaratory judgment**

Defendants argue correctly that California Business and Professional Code § 16600 is an insufficient basis for federal jurisdiction over Hy Cite's claim against AMI for declaratory judgment. Plaintiffs assert, however, that this Court may assert diversity or supplemental jurisdiction over Hy Cite's claim. Pursuant to 28 U.S.C. § 1367(a), this Court may assert supplemental jurisdiction over related claims and parties:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C.. § 1367(a). Accordingly, because the claim asserted by Hy Cite is so related to the claim asserted by Whitworth that it forms part of the same case or controversy, this Court asserts supplemental jurisdiction over Hy Cite's claim.

**C.    Improper Anticipatory Declaratory Judgment**

Notwithstanding the foregoing, the Court still must exercise its discretion to determine whether to assert jurisdiction over the instant action: "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C.A. § 2201(a); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) ("Since its inception, the Declaratory Judgment Act

Case No. C 06-00992 JF
ORDER DENYING DEFENDANTS' MOTION TO DISMISS
(JFLC1)

has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.").

Defendants argue that by asserting jurisdiction over the instant case, this Court would reward Plaintiffs for filing suit first in order to preempt a suit by Defendants in Florida.

> A suit is 'anticipatory' for the purposes of being an exception to the first-to-file rule if the plaintiff in the first-filed action filed suit on receipt of specific, concrete indications that a suit by the defendant was imminent. Such anticipatory suits are disfavored because they are examples of forum shopping. As such, by recognizing this exception to the first-to-file rule, courts seek to eliminate the race to the courthouse door in an attempt to preempt a later suit in another forum.

*Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 271 (C.D. Cal. 1998) (internal citations omitted). However, "[t]he underlying purpose of the first-to-file rule is to promote efficiency and should not be disregarded lightly." *Id*. at 269. Plaintiffs assert that there is no evidence that Defendants gave them specific and concrete indications that a suit brought by Defendants was imminent. Although Plaintiffs allege that the owner of HII and AMI "has threatened to sue Hy Cite and former AMI distributors for allegedly breaching their Distributor Agreements or, in the case of Hy Cite, for tortiously interfering with the Distributor Agreements, and Plaintiffs collectively have a reasonable apprehension of a lawsuit based upon those threats," these allegations are not "specific, concrete indications that a suit by the defendant was imminent." *Id*. at 271. Not all indications of a dispute or contract breach are necessarily evidence that suit is imminent:

> Oxxford argues that because Bryant filed this action in an obvious response to its letter of June 14, 2000, he "raced to the courthouse" in a brazen display of forum shopping. There is some merit to that contention, although Oxxford's letter indicated only that it would "declare a breach" and that it would "seek indemnification" if Bryant did not honor the license agreement. Such language no doubt put Bryant "on notice that [Oxxford] was at least considering filing suit against [him]. [Oxxford's] letter, however, gave no indication that a lawsuit was imminent, or that [Oxxford] was doing anything more than blowing smoke about a potential lawsuit."
> It is basic contract law that declaring a breach, which is what Oxxford threatened to do here, does not necessarily indicate a lawsuit will follow, but can be merely the first step in excusing one's self from future performance under the contract.

*Bryant v. Oxxford Exp., Inc.*, 181 F.Supp.2d 1045, 1048-49 (C.D. Cal. 2000). As in *Bryant*, the Court concludes that the instant action is not improperly anticipatory.

10

## IV. ORDER

Good cause therefore appearing, IT IS HEREBY ORDERED that Defendants' motion to dismiss is DENIED.

DATED: May 24, 2006

_____
JEREMY FOGEL
United States District Judge

Case No. C 06-00992 JF
ORDER DENYING DEFENDANTS' MOTION TO DISMISS
(JFLC1)

1   This Order has been served upon the following persons:

2   Xochitl D. Arteaga           xochitl.arteaga@lw.com, jennifer.leung@lw.com

3   J. Donald Best               jdbest@mbf-law.com, sakrause@michaelbest.com

4   J. Donald Best               jdbest@michaelbest.com, sakrause@michaelbest.com

5   Amy O. Bruchs                aobruchs@michaelbest.com, sktrotter@michaelbest.com

6   Michael Joseph Furbush       mfurbush@groneklatham.com, jhopkins@groneklatham.com

7   Daniel Patrick Osterndorf    dosterndorf@groneklatham.com, jhopkins@groneklatham.com

8   John C. Scheller             jcscheller@michaelbest.com, lmmansfield@michaelbest.com

12

Case No. C 06-00992 JF
ORDER DENYING DEFENDANTS' MOTION TO DISMISS
(JFLC1)